## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALPHAPOINTE
7501 Prospect
Kansas City, MO 64132,

    and

WINSTON-SALEM INDUSTRIES FOR THE
BLIND *dba* IFB SOLUTIONS, Inc.
7730 North Point Blvd.
Winston-Salem, NC 27106,

    v.

THE DEPARTMENT OF VETERANS AFFAIRS,
an agency of the United States of America,
810 Vermont Ave. NW Washington DC 20571,

    and

ROBERT WILKIE, in his official capacity as
SECRETARY OF THE DEPARTMENT OF
VETERANS AFFAIRS,
810 Vermont Ave. NW Washington DC 20571,

    and

UNITED STATES OF AMERICA,
SERVE:
Jessie K. Liu, United States Attorney
United States Attorney's Office
555 4th Street
Washington, DC 20530,

COPY:
The Honorable William P. Barr,
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530,

    Defendants.

Civil Action No. _____

Judge: _____

Date: _____

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1

Plaintiffs Alphapointe and Winston-Salem Industries for the Blind *dba* IFB Solutions, Inc. ("IFB Solutions") (collectively, "Plaintiffs"), by and through undersigned counsel, file this First Amended Complaint for declaratory judgment, preliminary injunctive relief, and permanent injunctive relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and allege as follows:

## INTRODUCTION

1.     At issue in this lawsuit is the unlawful issuance by the Department of Veterans Affairs ("VA") of a class deviation allegedly intended to implement the May 20, 2019 Federal Circuit mandate in *PDS Consultants, Inc. v. United States*, 907 F.3d 1345 (Fed. Cir. 2018) ("*PDS Consultants*").  *See* Class Deviation from VAAR 808.002, Priorities for Use of Government Supply Sources and VAAR 808.6, Acquisition from Federal Prison Industries, Inc. (VIEWS 00217190) (May 20, 2019) ("2019 VA Class Deviation"); *see also*, Issuance of Class Deviation from VA Acquisition Regulation (VAAR) Part 808—Required Sources of Supplies and Services and Conforming Amendments, 84 Fed. Reg. 29,389 (June 24, 2019).  Not only does the 2019 VA Class Deviation suffer from a number of fatal flaws, including that it is overly vague, inconsistent with, and exceeds the scope of the Federal Circuit's mandate, but, as implemented, it violates the Veterans Benefits, Health Care, and Information Technology Act of 2006, 38 U.S.C. §§ 8127-8128 ("VBA") and the APA.

2.     Under the guise of the Federal Circuit's mandate and its 2019 VA Class Deviation, the VA has now begun to award procurement contracts to veteran-owned small businesses ("VOSB") and service-disabled veteran-owned small businesses ("SDVOSB") where the VA has not identified two such businesses capable of and eligible to perform the work at issue.  Under governing law, the VA must give a procurement preference to qualified VOSBs if there are at least two such businesses qualified to perform the relevant requirements.  38 U.S.C. § 8127(d).  This

2

two-competitor benchmark is commonly known as the "Rule of Two." The Federal Circuit in *PDS Consultants* held that whenever the VA cannot satisfy the Rule of Two, it must then procure the requirements from AbilityOne Program participants as a mandatory source.

3.     Despite this, in the immediate wake of issuing and implementing its Class Deviation, the VA is taking concrete steps to end Plaintiffs' on-going procurement contracts under the AbilityOne Program and replace them with sole-source awards to VOSBs without first satisfying the Rule of Two. In doing so, the VA is violating the Federal Circuit's mandate.

4.     Most ominously, Plaintiffs have learned that Defendants intend to "transition" IFB Solutions' VISN 8 contract to Intervenor on August 15, 2019. This poses a significant and immediate risk to IFB Solutions.

5.     The VA's efforts to displace Plaintiffs from their existing procurement contracts in a manner that is at odds with the Federal Circuit's mandate and without first satisfying the Rule of Two are unsupported and unsupportable; these efforts are contrary to law and are likely to result in irreparable harm to Plaintiffs. These efforts are also at odds with the public interest and run counter to the VA's very purpose. Plaintiff IFB Solutions currently employs 15 veterans in direct support of its AbilityOne contracts with the VA, whereas PDS Consultants, to whom the VA intends to transition at least some of IFB Solutions' contracts, employs only six veterans. In other words, the VA intends to eliminate over twice as many veteran jobs as it creates when it terminates IFB Solutions' contracts in favor of PDS Consultants.

6.     Plaintiffs therefore seek a declaration from this Court that the VA's actions are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Plaintiffs also seek a temporary restraining order, as well as preliminary and permanent injunctive relief from this Court, enjoining the VA from so displacing the Plaintiffs. To the degree that the VA is basing these efforts on the text of its 2019 VA Class Deviation, Plaintiffs likewise seek a

declaration that the VA's conduct in issuing this Class Deviation is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and also seek a temporary restraining order, as well as preliminary and permanent injunctive relief from this Court, enjoining the VA from enforcing the 2019 VA Class Deviation.

## THE PARTIES

7.      Plaintiff Alphapointe is a nonprofit corporation organized and existing under the laws of the state of Missouri, with its principal place of business in Kansas City, Missouri. Alphapointe's mission is to empower people who are blind and visually impaired to achieve their goals and aspirations, including by providing them with employment opportunities, vocational training, rehabilitation services, education, and outreach. One of the ways in which Alphapointe carries out its mission is through serving as a qualified nonprofit agency ("NPA") within the AbilityOne Program, a federal program administered by the Committee for Purchase from People Who Are Blind or Severely Disabled, also known as U.S. AbilityOne Commission (the "Commission"). Alphapointe is suffering direct, substantial injury because the VA's action will reduce, if not eliminate, the VA's orders for Alphapointe's products, and the resulting loss of revenue will impact Alphapointe's ability to continue to deliver upon its important mission, including for example, forcing Alphapointe to eliminate jobs and scale back its programs. Under the AbilityOne Program, Alphapointe is a mandatory source of supply for the VA's purchase of pharmaceutical prescription bottles for use in the VA's mail order supply pharmacies, as well as for the VA's purchase of switchboard services. Prior to the VA's actions, Alphapointe was entitled to receive all VA orders for those products once the products were placed on the AbilityOne Procurement List for the VA. However, in April 2019, the VA communicated to Alphapointe that it will not be buying prescription bottles from the NPA and instead intends to compete the contract. There is no indication that the VA has or can satisfy the Rule of Two for

this contract either, a point underscored by the fact that an earlier 2016 Rule of Two analysis failed to identify more than one VOSB. Neither will the VA be purchasing switchboard services from Alphapointe, as it instead intends to compete this contract as well.

8.      Plaintiff IFB Solutions is a nonprofit corporation organized and existing under the laws of the state of North Carolina, with its principal place of business in Winston-Salem, North Carolina. IFB Solutions' mission is to empower people who are blind and visually impaired to achieve their goals and aspirations, including by providing them with employment opportunities, vocational training, rehabilitation services, education, and outreach.   Like Alphapointe, IFB Solutions carries out its mission is through serving as a NPA within the AbilityOne Program. IFB Solutions is suffering direct, substantial injury as a result of the VA's actions. The VA's actions have already or will eliminate VA orders for IFB Solutions' products. Under the AbilityOne Program, IFB Solutions is currently a mandatory source of supply and qualified nonprofit agency for the VA's purchase of eyeglasses and other vision-related products for Veterans Integrated Service Networks ("VISNs") 2 and 7, and a few locations within VISN 8. On May 24, 2019 – four days after it issued its new Class Deviation – the VA wrote to Plaintiff IFB Solutions indicating that it is canceling the contract for locations within VISN 8. Subsequently, the VA has cancelled IFB Solutions' contract in VISN 2 and has stated it will do the same for the contract in VISN 8 this Thursday, August 15, 2019. The resulting loss of revenue from this cancellation, and from future cancellations in VISNs 2 and 7 as contemplated in the June 11, 2019 email from Peter Wechsler to undersigned counsel, will impact IFB Solutions' ability to continue to deliver upon its important mission, including for example, forcing IFB Solutions to eliminate jobs and scale back its programs.

9.      Defendant VA is "an executive department" of the United States Government, 38 U.S.C. § 301, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). The VA is

currently headquartered at 810 Vermont Avenue NW, Washington, DC 20571.

10.     Defendant Robert Wilkie is the Secretary of Veterans Affairs and is responsible

for the "control, direction, and management" of the VA. 38 U.S.C. § 303. Defendant Wilkie is

sued in his official capacity as the Secretary of Veterans Affairs.

11.     Defendant United States of America is an appropriate defendant under the APA, 5

U.S.C. § 703, as this action seeks judicial review of final agency action.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this

is a civil action arising under the laws of the United States and is brought pursuant to the APA,

5 U.S.C. §§ 701-706.  This Court has jurisdiction to review the VA's 2019 VA Class Deviation

because it constitutes final agency action.

13.     Venue is proper in this District because the VA is headquartered in the District of

Columbia and because a substantial part of the events giving rise to Plaintiffs' claims occurred

within this judicial district. *See* 28 U.S.C. § 1391(e).

## FACTUAL BACKGROUND

### The Javits-Wagner O'Day Act ("JWOD") and the AbilityOne Program

14.     The mission of the AbilityOne Program is simple and straightforward: to

provide employment opportunities for people who are blind or have other severe disabilities,

many of whom are veterans, in the manufacture and delivery of products and services to the

federal government.

15.     Congress first enabled nonprofit agencies that serve the blind to sell products

to the federal government in 1938.  Congress expanded this mandate in 1971 to include people

with other significant disabilities through passage of the Javits-Wagner-O'Day Act, 41 U.S.C.

§§ 8501-8506 ("JWOD Act"), which serves as the basis for the federal AbilityOne Program.  The

6

AbilityOne Program is among the nation's largest providers of jobs for people who are blind or have significant disabilities. It uses the purchasing power of the federal government to buy products and services from participating, community-based nonprofit agencies that train and employ workers who are blind and/or severely disabled, like Plaintiffs.

16.     The AbilityOne Program addresses the severe employment and related economic disparities facing Americans who are blind or have significant disabilities, only about 38 percent of whom are employed. To date, the AbilityOne Program has made a meaningful difference in the lives of blind and disabled Americans. As noted in a recently published annual report, federal contracts for products and services created employment opportunities for more than 45,000 people who are blind or have significant disabilities, and accounted for $681.5 million in annual wages paid to employees working on AbilityOne contracts during fiscal year 2017. *See, e.g.*, AbilityOne Commission, Fiscal Year 2018 Performance and Accountability Report, https://www.abilityone.gov/commission/documents/U.S.%20AbilityOne%20Commission%20P AR%20FY%202018%20Post%20Final.pdf.

17.     The Commission is an independent federal agency created to advance the policy of the United States "to increase employment and training opportunities for persons who are blind or have other severe disabilities through Government purchasing of commodities and services from nonprofit agencies employing these persons." 41 C.F.R. § 51-1.3. It is comprised of fifteen members appointed by the President of the United States, eleven of whom are officers or employees of the United States chosen from an enumerated list of departments and agencies of the United States Government, which includes the VA. 41 U.S.C. § 8502(b)(1)(H).

18.     In accordance with its statutory mandate to provide employment opportunities for people who are blind or have other severe disabilities through the award of federal government contracts, the Commission is responsible for establishing and maintaining a "Procurement List"

that includes all products and services determined by the Commission to be suitable for purchase from a qualified AbilityOne nonprofit agency. *See* 41 U.S.C. § 8503(a). The Commission has the exclusive authority to publish additions to and deletions from the Procurement List in the Federal Register, after a period of notice and comment. *See id.* § 8503(a)(2). In addition, the Commission is authorized to determine and revise the fair market price of the products and services contained on the Procurement List. *Id.* § 8503(b).

19.     To maximize the impact of the AbilityOne Program, the JWOD Act makes it a "mandatory source" for federal government procurement. Under the JWOD Act, federal government agencies are *required* to purchase products and services that appear on the AbilityOne Procurement List on a priority basis – *i.e.*, before considering other alternatives such as full and open competition. 41 U.S.C. § 8504(a).

20.     Once a product or service is on the Procurement List, government agencies are required to purchase the listed items only from a designated qualified nonprofit agency dedicated to providing employment opportunities and training to persons who are blind or severely disabled. The JWOD Act provides: "[a]n entity of the Federal Government intending to procure a product or service on the procurement list . . . shall procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with the regulations of the Committee and at the price the Committee establishes if the product or service is available within the period required by the entity." *Id.* § 8504(a) (emphasis added); *see also* 48 C.F.R. § 8.002 ("Priorities for use of mandatory Government sources").

21.     Except as expressly stated, the mandatory sourcing requirement in the JWOD Act binds each "entity of the legislative or judicial branch, a military department or executive agency (as defined in sections 102 and 105 of title 5, respectively), the United States Postal Service, and a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces." 41 U.S.C. §

8

8501(4).   The JWOD Act expressly exempts from its application only "the procurement of a product that is available from an industry established under chapter 307 of title 18 [prison industries] and that is required under section 4124 of title 18 to be procured from that industry." Id. § 8504(b).

22.     The VA is an executive agency as defined in Section 105 of Title 5 of the United States Code, and is listed among the departments of the Executive Branch in Section 101 of Title 5. 5 U.S.C. §§ 101, 105.   At no time since its passage has Congress ever amended the JWOD Act to exempt the VA from its coverage.

### JWOD Act Implementing Regulations and Procurement List Updates

23.     The JWOD Act permits the Commission to "prescribe regulations regarding specifications for products and services on the procurement list, the time of their delivery, and other matters as necessary to carry out this chapter." 41 U.S.C. § 8503(d)(1).   The JWOD Act requires the Commission to "prescribe regulations providing that when the Federal Government purchases products produced and offered for sale by qualified nonprofit agencies for the blind or qualified nonprofit agencies for other severely disabled, priority shall be given to products produced and offered for sale by qualified nonprofit agencies for the blind." 41 U.S.C. § 8503(d)(2).

24.     The Commission has complied, issuing a regulation stating that "[i]n approving the addition of commodities to the Procurement List, the Committee accords priority to nonprofit agencies for the blind.   Nonprofit agencies for the blind and nonprofit agencies employing persons with severe disabilities have equal priorities for services." 41 C.F.R. § 51-1.2(c).

25.     A "[q]ualified nonprofit agency for the blind" means:

[A]n agency organized under the laws of the United States or of any State, operated in the interest of blind individuals, and the net income of which does not inure in whole or in part to the benefit of any shareholder or other individual; which complies with applicable occupational health and safety standards prescribed by

the Secretary of Labor; and which in furnishing commodities and services (whether or not the commodities or services are procured under these regulations) during the fiscal year employs blind individuals for not less than 75 percent of the work-hours of direct labor required to furnish such commodities or services.

*Id.* § 51-1.3.

26.     Plaintiffs Alphapointe and IFB are among the qualified nonprofit agencies ("NPAs") for the blind participating in the AbilityOne Program under the JWOD Act.

27.     The Federal Acquisition Regulation ("FAR") Subpart 8.7 provides implementing guidance for the JWOD Act.  Specifically, FAR 8.704, Purchase Priorities, states: "The [JWOD Act] requires the Government to purchase supplies or services on the Procurement List, at prices established by the Committee, from AbilityOne participating nonprofit agencies if they are available within the period required."

### The Veterans Benefits Act ("VBA")

28.     On December 22, 2006, Congress passed the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. Law No. 109-461, 120 Stat. 3403 (2006) (the "Veterans Benefits Act" or "VBA").  The VBA was enacted in part "to increase contracting opportunities for small business concerns owned and controlled by veterans and small business concerns owned and controlled by veterans with service-connected disabilities . . . ." 38 U.S.C. § 8127(a).  Among other things, the VBA established the the Veterans First Contracting Program ("VFCP"), which imposes on the VA in competitive solicitations an obligation to procure requirements from a veteran-owned small business concern if, using a required "Rule of Two" analysis, the VA first determines that there are at least two qualified veteran-owned small businesses available for contracting: "a contracting office of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned

and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States." 38 U.S.C. § 8127(d).

29.     For many years, the VFCP did not impact the accepted priority status of the AbilityOne Program.  Indeed, the VA issued a final rule implementing the VFCP in which it expressly stated that "AbilityOne's priority status has not been changed as a result of this rule." 74 Fed. Reg. 64,619, 64, 622 (Dec. 8, 2009).  Relatedly, on April 28, 2010, the VA issued an internal information letter providing guidance to VA contracting activities concerning the VFCP and the AbilityOne Program.  *See* New Guidelines for Placing Items and Services on the AbilityOne Procurement List, IL 001AL- 10-06, Office of Acquisition and Logistics Information Letter (Apr. 28, 2010) ("2010 Information Letter").  While the 2010 Information Letter purported to change the way that the VA would handle the proactive placement of requirements on the AbilityOne Procurement List, it made clear that the VA would continue to give preference to items on the Procurement List, even if the Commission added them after January 7, 2010, consistent with the mandatory source requirements in the JWOD Act and the mandatory source priorities in FAR Part 8.

### *PDS Consultants* Litigation and the VA's 2017 and 2019 Class Deviations

30.     This changed with the VA's issuance on March 1, 2017, of an "amended" Class Deviation that for the first time gave priority to VOSBs over qualified nonprofit agencies that employ persons who are blind and severely disabled.  Class Deviation (Revised) -- Implementation of the Veterans First Contracting Program (VFCP) as a result of the U.S. Supreme Court Decision (Class Deviation -- VFCP FEB 2017) (VAIQ #7773453) ("2017 VA Class Deviation").

31.     The VA issued the 2017 VA Class Deviation during the pendency of a lawsuit challenging its longstanding policy that JWOD mandated that the VA award contracts to

businesses on the AbilityOne Procurement List before it evaluated any veteran-owned businesses under the VBA's Rule of Two.  In that case, the United States Court of Federal Claims held that, for purposes of VA procurement, the Rule of Two in § 8127(d) takes priority over the AbilityOne Program.  *PDS Consultants, Inc. v. United States*, 132 Fed. Cl. 117 (2017) ("*PDS Consultants*"). Notably, *PDS Consultants* contained critical language that clarified that the AbilityOne Program remains a mandatory procurement source for the VA whenever the Rule of Two is not met. According to the court, if the VA is unable to identify "*two* qualified veteran-owned small businesses willing to perform" a given contract, it is "*required* to use the AbilityOne List as a mandatory source." *Id.* at 126 (emphasis added).  This language echoed text from the 2017 VA Class Deviation that also stated: "[w]hen the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to Veterans Affairs Acquisition Regulation Supplement ("VAAR") subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies." 2017 VA Class Deviation at Attach. 4.

32.     The Federal Circuit later affirmed the U.S. Court of Federal Claims decision in *PDS Consultants,* including its holding that the AbilityOne procurement list is mandatory for the VA whenever the Rule of Two is not satisfied.  *PDS Consultants*, 907 F.3d at 1358, 1359. According to the Federal Circuit, the VBA applies to VA procurements "*only* when the Rule of Two is satisfied," and the VA "*must* still comply with the JWOD . . . when the Rule of Two is not implicated." *Id.* (emphasis added).

33.     In *PDS Consultants*, PDS challenged the VA's procurement of various items and argued that the Rule of Two applies to VA procurements of goods and services that are found on the AbilityOne Procurement List. 132 Fed. Cl. 117.  The VA and National Industries for the Blind ("NIB"), the AbilityOne-appointed central nonprofit agency for blind persons (as an amicus), both argued that the AbilityOne Procurement List continued to take priority over the VBA.  *Id.*

34.    Nevertheless, while the case was pending, the VA appeared to change tacks, and on March 1, 2017, it amended the July 2016 VAAR Class Deviation from VAAR 808.002. 2017 VA Class Deviation. The 2017 VA Class Deviation stated:

> Supplies on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7).
>
> (A) Supplies [and Services] on the Procurement List are mandatory only if:
>
> (1) The supplies [or services] were added to the Procurement List prior to January 7, 2010, and the date the supplies were added is readily available; or
>
> (2) The supplies [or services] were added to the Procurement List on or after January 7, 2010, the VA Rule of Two (see VAAR Class Deviation 802.101 definition) was applied prior to the addition of the supplies to the Procurement List, and that information is readily available.
>
> (B) The VA Rule of Two must be applied prior to VA requesting addition of new supplies [or services] to the Procurement List. On or after January 7, 2010, if supplies were added to the Procurement List at the request of an agency other than the VA, the VA Rule of Two will be applied prior to VA purchasing the supplies from the Procurement List.
>
> (C) When the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to VAAR subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies.

2017 VA Class Deviation at Attach 4.

35.    Five days later, on March 6, 2017, the VA filed notice with the Court of Federal Claims that it had amended its own regulations "to require contracting officers to apply the VA Rule of Two for any acquisition for supplies or services on the AbilityOne procurement list if the date the supplies or services [were added to the list] is not 'readily available' or if the supplies or services were added to the list after January 7, 2010 unless the VA applied the Rule of Two before

13

the procurement list addition was made." See *PDS Consultants, Inc. v. United States*, COFC No.

1:16-cv-1063, ECF No. 68.

36.    The Court of Federal Claims ultimately ruled in favor of PDS and held that for

purposes of VA procurement, the Rule of Two in § 8127(d) takes priority over the AbilityOne

Program. *PDS Consultants*, 132 Fed. Cl. at 117.   Importantly, the court clarified that the

AbilityOne Program remains the mandatory procurement source for the VA whenever the Rule of

Two is not met and the product or service at issue is available on the AbilityOne Procurement List.

The court further held that if the VA is unable to identify "two qualified veteran-owned small

businesses willing to perform" a given contract, it is "*required* to use the AbilityOne List as a

mandatory source." *PDS Consultants*, 132 Fed. Cl. at 126 (emphasis added).

37.    In affirming the decision, the Federal Circuit (like the Court of Federal Claims)

held that the VBA applies to VA procurements "*only* when the Rule of Two is satisfied," and the

VA "*must* still comply with the JWOD . . . when the Rule of Two is not implicated." *PDS

Consultants*, 907 F.3d at 1358, 1359 (emphasis added).

38.    On May 20, 2019 – the same day that the Federal Circuit denied a motion for a stay

and issued its mandate in *PDS Consultants* – the VA issued a new Class Deviation, purportedly to

enact the procurement priorities contained in the Federal Circuit's decision.   Citing *PDS

Consultants* as "binding circuit precedent," the VA found that "when a product or service is on the

AbilityOne Procurement List and ordinarily would result in award under the JWOD program, the

Act instead unambiguously requires that priority be given to Veteran-owned small businesses."

2019 VA Class Deviation, ¶ 8.b.

39.    The 2019 VA Class Deviation is overly vague and exceeds the scope of the Federal

Circuit's directives in several key respects.

40.     It is improperly vague in apparently empowering the VA to prioritize veteran-owned small businesses over the AbilityOne program even where the Rule of Two is not satisfied. Specifically, it states:

- Contracting officers shall apply the VA Rule of Two, as implemented in VAAR subpart 819.70, prior to awarding any contract to AbilityOne non-profit organizations or to Federal Prison Industries, Inc.
- For AbilityOne, if an award is not made to an eligible Vender Information Pages (VIP)-listed and verified SDVOSB or VOSB under VAAR subpart 819.70, the priority use of AbilityOne applies and supplies and services on the Procurement List are mandatory sources.

2019 VA Class Deviation, ¶ 8.c.

41.     Although this language perhaps superficially seems to implement the Federal Circuit's mandate from *PDS Consultants*, it is actually at odds with the mandate. Among other things, it contains a material ambiguity that deviates significantly from that mandate and threatens to erode the status of the AbilityOne Program in the VA procurement process. Notably, the VA's new policy does not state that "the priority use of AbilityOne applies and supplies and services on the Procurement List" are mandatory in *any* instance where the Rule of Two is not satisfied – as the Federal Circuit held. Rather, the VA's policy only states that the priority use of AbilityOne applies whenever "*an award is not made* to an eligible … SDVOSB or VOSB under VAAR subpart 819.70." (emphasis added).

42.     This is significant because, under VAAR subpart 819.70 and pursuant to 38 U.S.C. §§ 8127(b) & (c), there are instances where the VA "may award a contract" to a SDVOSB or VOSB, without requiring competitive bidding, *i.e.*, even where the Rule of Two is not satisfied. *See, e.g.*, 38 U.S.C. § 8127 (c) ("a contracting officer of the Department may award a contract to a small business concern owned and controlled by veterans or a small business concern owned and controlled by veterans with service-connected disabilities using procedures other than competitive procedures…"); *see also* VAAR 819.7007.  Thus, as drafted, the 2019 VA Class Deviation

15

contemplates that the VA may prioritize a SDVOSB or VOSB over an AbilityOne participant even though the Rule of Two has not been satisfied. This is clearly at odds with the "binding circuit precedent" the VA cited as the basis for its 2019 VA Class Deviation.

43.     Critically, the Federal Circuit in *PDS Consultants* expressly considered and rejected the idea that non-competitive awards to an SDVOSB or VOSB could trump the AbilityOne Procurement List. *PDS Consultants*, 907 F.3d at 1358.

44.     The "standard principle of statutory construction" upon which the court relied was that "a specific statute takes precedence over a more general one." *Id.* (internal quotations omitted). On that basis, the Federal Circuit concluded that, "[w]hile JWOD applies to all agencies of the federal government, the VBA applies only to VA procurements *and only when the Rule of Two is satisfied.* The express, specific directives in § 8127(d), thus override the more general contracting requirements of the JWOD." *Id* (emphasis added).

45.     Nevertheless, the 2019 VA Class Deviation appears to indicate that the directives of § 8127(b) and (c) override the contracting requirements of the JWOD Act as well – even though the Federal Circuit held differently. In this manner, the VA has now decided, on its own and without notice-and-comment, that it must prioritize SDVOSBs and VOSBs over the AbilityOne Procurement List even where the Rule of Two is not satisfied. Indeed, the VA only invited public comment on the 2019 VA Class Deviation *after* it published it in the Federal Register on June 24, 2019, and *after* it began taking concrete steps to cancel Plaintiffs' contracts with the VA pursuant to that Class Deviation. *See* 84 Fed. Reg. 29,389.

46.     In fact, when the VA published the 2019 VA Class Deviation in the Federal Register, even though it slightly reworded the directives at issue, it once again included ambiguous language that apparently permits the VA to prioritize sole source awards to SDVOSBs and VOSBs over the AbilityOne Procurement List. Like the initial version of the 2019 VA Class Deviation

published by the VA on May 20, 2019, the Federal Register version states that "*before* awarding a contract to a qualified nonprofit organization under" the JWOD Act, the VA must apply the Rule of Two. 84 Fed. Reg. 29,390 (emphasis added); *cf.* 2019 VA Class Deviation at ¶ 8.c ("Contracting officers shall apply the VA Rule of Two…*prior* to awarding any contract to AbilityOne non-profit orgnizations…) (emphasis added). Yet, the very next sentence in the Federal Register version of the Class Deviation vaguely contemplates that the VA can prioritize all contract awards to SDVOSBs and VOSBs without reference to the Rule of Two, stating that "if VA is *unable to award* to" an SDVOSB or VOSB "using the procedures set forth in VAAR subpart 819.70, AbilityOne nonprofit organization [sic] and FPI would retain their mandatory source status." 84 Fed. Reg. 29,390 (emphasis added); *cf.* 2019 VA Class Deviation at ¶ 8.c ("*if an award is not made* to an eligible" SDVOSB or VOSB under VAAR subpart 819.70…) (emphasis added).

47.     Further illustrating that the 2019 VA Class Deviation improperly de-emphasizes the Rule of Two, the language in the 2017 VA Class Deviation explicitly ties the AbilityOne Program's priority status to whether the Rule of Two is met: "[w]hen the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to VAAR subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies." 2017 VA Class Deviation at Attach. 4.  In contrast, the language in the VA's 2019 VA Class Deviation is now much more general and does not explicitly state that when the Rule of Two is not met, the AbilityOne Program takes precedence. *See, e.g.*, 2019 VA Class Deviation at ¶ 8.c. ("For AbilityOne, if an award is not made to an eligible Vender Information Pages (VIP)-listed and verified SDVOSB or VOSB under VAAR subpart 819.70, the priority use of AbilityOne applies and supplies and services on the Procurement List are mandatory sources."); *see also* 84 Fed. Reg. 29,390 ("if VA is *unable to award* to" an SDVOSB or VOSB "using the procedures set forth in

VAAR subpart 819.70, AbilityOne nonprofit organization [sic] and FPI would retain their mandatory source status.") (emphasis added).

48.     The 2019 VA Class Deviation also exceeds the scope of the Federal Circuit's mandate in that the VBA empowers the VA to prioritize SDVOSBs and VOSBs over procurement through Federal Prison Industries, Inc. – a topic with the Federal Circuit never considered in *PDS Consultants*.

49.     Not only does the 2019 VA Class Deviation as written fail to comply with the Federal Circuit's mandate, but the VA's implementation of its directives also fails to adhere to the language of the Class Deviation itself, and thus is even further removed from the requirements of the Federal Circuit's ruling.   Among other things, the VA is terminating immediately its AbilityOne contracts, refusing to exercise existing options, and requiring AbilityOne NPAs to simply transition their contracts directly to entities that claim to be qualified SDVOSBs.   This is all without regard to the existence of at least two qualified SDVOSBs, as required by the Rule of Two, and in disavowance of the VA's relevant obligations under the Competition in Contracting Act ("CICA").

50.     The Federal Circuit's decision in *PDS Consultants* provides no support for these arbitrary, capricious, and unlawful actions.   Nowhere does it call for the VA to cancel existing procurement contracts – yet that is exactly what the VA has begun doing.   Neither does it empower the VA to omit or disregard the Rule of Two analysis and award contracts on a sole source basis. Yet the 2019 VA Class Deviation appears to permit this, and the VA has in fact started to award contracts to SDVOSBs and VOSBs on a sole-source basis without regard to the Rule of Two.

### The VA's Current Efforts to Displace Plaintiffs from their Contracts

51.     Plaintiffs have learned that Defendants intend to "transition" IFB Solutions' VISN 8 contract to Intervenor this Thursday, August 15, 2019.   This poses a significant and

immediate risk to IFB Solutions.

52.     On May 24, 2019 – four days after it issued its new Class Deviation – the VA wrote to Plaintiff IFB Solutions seeking "an initial teleconference with the representatives of PDS and Ability 1[sic] … concerning key transition items" for IFB Solutions' contracts with the VA for VISN 8.  Notably, there is no indication that the VA has satisfied the Rule of Two regarding this 8 contract.  Despite that, the VA is taking concrete steps to immediately award and transition the contract to PDS.

53.     On June 11, 2019, Peter Wechsler of the Department of Justice notified undersigned counsel by email that "*any* contracting decisions" the VA makes will now be subject to the 2019 VA Class Deviation – "including decisions to issue additional orders or exercise options" under existing contracts (emphasis added).  This effectively means the VA is repudiating those pending contracts in favor of SDVOSBs and VOSBs, and at the expense of Plaintiffs.

54.     On July 30, 2019, the VA extended IFB's contract in VISN 8 through August 15, 2019.  Through a series of subsequent emails, the VA has now confirmed that it will not extend the contract again.  Instead, the contract will go to PDS Consultants.

55.     Likewise, on June 17, the VA's VISN 2 contract specialist informed IFB Solutions that it would not be exercising its option to continue that VISN 2 contract past September 30, 2019, despite having two six month option periods remaining on IFB's VISN 2 contract through September 2020.  As in VISN 8, the contracting specialist was not willing to confirm that the VA would perform a Rule of Two analysis before transitioning the contract to an alternate provider.

56.     The VA also earlier made a sole source award to PDS Consultants on June 18, 2019 for prescription eyewear in VISN 2 Downstate.  After claiming to the GAO they would take corrective action for disregarding the Rule of Two process in February 2019, the VA again cited

the VBA as justification for the sole source award, without regard to the application of the Rule of Two or the express mandate of the Federal Circuit.

57.    Despite the sole source award to PDS Consultants, the VA changed positions on August 9 and instead awarded a "bridge" contract to Superior Optical Labs, Inc. for VISN 2, running for one year with one six-moth option period.

58.    As a result of the loss of its contracts for VISN 8 and VISN 2, most of IFB Solutions' business will be totally eliminated. What little business it has left is subject to pending termination as well.

59.    Relatedly, on July 9, 2019, the VA communicated to IFB that it will only be continuing its contract to provide eyeglasses and other vision-related products for VISN 7 for an additional 90 days, and then will be canceling the contract. The VA's explanation was that it was "not able to extend an option year per the court ruling" and these contracts "must go out" to VOSBs and SDVOSBs. Nothing in this statement indicates that the VA is or will conduct a Rule of Two analysis. On the contrary, it directly implies that the Federal Circuit requires an award of the contract to an SDVOSB or a VOSB regardless of whether the Rule of Two can be met.

60.    Similarly, in April 2019, the VA communicated to Alphapointe that it will not be buying prescription bottles from Alphapointe (as it has for nearly 25 years) and instead intends to compete the contract because it had identified a "possible second SDVOSB." Alphapointe is doubtful that the VA can satisfy the Rule of Two for this contract, because in 2016, the VA engaged in a Rule of Two analysis for these same requirements and was not able to identify more than one VOSB willing to bid on the contract. In reliance on representations from the VA that Alphapointe would continue to service the VA's contract for prescription bottles, Alphapointe invested millions of dollars in the technology and equipment necessary to meet the VA's contractual needs. It is highly unlikely that the VA can identify two SDVOSBs or VOSBs that have made or are willing

to make the same investments, especially after being unable to do so just a few short years ago. In other words, Alphapointe will now be prevented from obtaining a contract to provide the VA with prescription bottles, and the VA's basis for that result is directly contradicted by the Federal Circuit's decision in *PDS Consultants*.

61.    Neither will the VA be purchasing switchboard services from Alphapointe after the current contract expires on September 30, 2019. The VA communicated this to Alphapointe in June 2019, stating that it intends to compete this contract as well. There is no indication that the VA has or can satisfy the Rule of Two for this contract either.

62.    Moreover, Defendants' repudiation of the VA's contracts with Plaintiffs not only violates the Federal Circuit's mandate, it is also fundamentally at odds with the expectations and course of conduct of the parties throughout their contracting relationships. That course of conduct established that the contracts could not be terminated for convenience – which is exactly what Defendants have chosen to do.

### Significant Impact on Plaintiffs

63.    The VA has long been, and remains, one of the most important customers for Plaintiffs. VA procurements account for approximately $31 million, *i.e.*, 20 percent, of IFB Solutions' annual revenues, and $13 million, or 21 percent, of Alphapointe's annual revenues, respectively. The VA's 2019 VA Class Deviation will result in IFB and Alphapointe losing all these revenue sources and the blind individuals they employ losing wages, benefits, and opportunities for independence.

64.    The revenues from these VA contracts support the direct employment of blind individuals as well as training, education, rehabilitation, and outreach programs for employees and members of the blind community. The losses of these revenues, which are a direct result of the VA's actions, will have a devastating impact on the Plaintiffs, their employees, and the blind

community they serve.

65.     Given the mandatory source nature of the AbilityOne Program and the VA's longstanding policy and practice, including since passage of the VBA, each of the Plaintiffs reasonably expected to continue to serve the VA's needs under their contracts for the long term. This is no longer the case as a result of the VA's position as set forth in the 2019 VA Class Deviation and subsequent communications, which already have had a direct and negative impact on the Plaintiffs.

66.     The unemployment rate for people who are blind, which is historically in the range of 70 to 80 percent, far exceeds that of the general population.  IFB currently employs 76 blind and visually impaired individuals in direct support of its AbilityOne contracts with the VA. IFB also employs 15 veterans in direct support of its AbilityOne contracts with the VA.  These jobs are at significant risk if the VA cancels its contracts with IFB, as the VA accounts for 97% of IFB's optical business.

67.     Alphapointe currently employs approximately 400 people, approximately 230 of whom are blind or visually impaired.  The portion of its workforce dedicated to working on VA-related business presently includes 15 veterans, 4 of whom are blind or visually impaired. Alphapointe also had planned to hire an additional 5-10 blind or visually impaired persons to meet anticipated contractual commitments associated with the VA business.

68.     The VA's actions will jeopardize the Plaintiffs' ability to continue employing many of the blind or visually impaired persons currently on their payroll and to hire additional blind or visually impaired persons as planned.  All of these blind or visually impaired persons will experience great difficulty finding replacement jobs due to the nature of their severe impairment.

69.     The VA's position change as set forth in the 2019 VA Class Deviation will

have a severe impact beyond a loss of employment for current and prospective employees of Plaintiffs. A substantial portion of Plaintiffs' annual revenues are dedicated to providing support and training services for the blind community, including vocational training, education, rehabilitation, and outreach. In the case of Alphapointe, these services reach nearly 2,000 members of the blind community annually, including nearly 350 children. In fact, Alphapointe is the sole comprehensive provider of these services in Missouri. Without the VA business, Alphapointe would have to scale back significantly or eliminate these programs, resulting in significant negative impact to those who benefit from them. Thus, the loss of VA business and its associated revenue will have a significant, devastating impact, not just on Alphapointe, but on its employees and on the community as well. The same is true of the community IFB Solutions serves.

70.     The VA's actions likely will have a direct and substantial impact on another aspect of Alphapointe's operations. Specifically, the loss of Alphapointe's VA business relating to plastic bottles could cause Alphapointe to fail its debt covenants for a loan previously secured to purchase property in Queens, NY. This would have a significant impact on Alphapointe, its employees, and the blind community at large, as Alphapointe is New York City's largest employer of individuals who are blind and visually impaired and the only industrial employer of this population in the City's five boroughs.

71.     Meanwhile IFB Solutions' vocational training, education, rehabilitation, and outreach services reach nearly 4,500 members of the community annually who face substantial vision loss. The loss of the contract in VISN 8 to PDS means the loss of revenue of $11.6 annually. It will also result in IFB Solutions having to lay off 20 people who are blind. Further, the VA's decision to grant a sole source award to another company for VISN 2 without regard to the application of the Rule of Two or the express mandate of the Federal Circuit also represents

approximately $2.35 million in annual revenue that IFB Solutions expected it would receive, not to mention approximately 12 jobs lost for people who are blind.   Should the VA improperly procure prescription eyewear from PDS in VISNs 7 or the remaining portion of VISN 2, IFB Solutions will have to scale back its intentions regarding these programs as well, including any growth, resulting in significant negative impact to those who benefit from them.   IFB would lose revenue of approximately $17 million annually and will have to lay off over 40 people who are blind and who would have not more than a one in three opportunity of ever going back to work.

### COUNT I
### (Declaratory Judgment that the VA's Actions
### Violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

72.      Paragraphs 1-71 are incorporated by reference herein.

73.      Under the APA, a court must hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. § 706(2).

74.      The VA's adoption of the 2019 VA Class Deviation was arbitrary, capricious, and contrary to law because the 2019 VA Class Deviation is inconsistent with and exceeds the scope of the Federal Circuit's mandate in *PDS Consultants*.  Nowhere does the Federal Circuit's decision in that case call for the VA to cancel existing procurement contracts.  Nor does it empower the VA to omit or disregard the Rule of Two analysis and award contracts on a single source basis.  Yet, the 2019 VA Class Deviation appears to permit this.

75.      The VA has cited the 2019 VA Class Deviation as its basis for elevating a contracting preference for VOSBs and SDVOSBs over a priority for AbilityOne NPAs even where the Rule of Two has not been satisfied.  This interpretation and the 2019 VA Class Deviation violates the APA in ignoring the mandatory sourcing requirements set forth in the

Federal Circuit's decision in *PDS Consultants*.  According to the Federal Circuit (and just as the Court of Federal Claims held), the VBA applies to VA procurements "*only* when the Rule of Two is satisfied," and the VA "*must* still comply with the JWOD . . . when the Rule of Two is not implicated." *PDS Consultants*, 907 F.3d at 1358, 1359 (emphasis added).

76.     Further, the VA violated the APA by adopting the 2019 VA Class Deviation and taking concrete steps to cancel Plaintiffs' contracts pursuant to that Class Deviation without adhering to the APA's notice-and-comment requirements.  Despite that the 2019 VA Class Deviation imposes new obligations and represents a significant departure from past practice by the VA as regards the prioritization of products and services available on the AbilityOne Procurement List, the VA provided no advance notice to the public, nor did the public have an opportunity to comment on the new rule before the VA began implementing it.  The VA then compounded this violation by publishing the 2019 VA Class Deviation in the Federal Register merely as a formality – after it had already begun taking action to terminate the contracts of Plaintiffs pursuant to that Class Deviation.

77.     The VA's efforts to transition contracts away from IFB Solutions and Alphapointe without first satisfying the Rule of Two also violate the APA.  These violations include the VA's attempts to transition: IFB Solutions' VISN 8 contract to PDS Consultants; IFB Solutions' VISN 2 contract to Superior Optical Labs, Inc.; IFB Solutions' VISN 7 contract; and Alphapointe's prescription bottles and switchboard contracts.

78.     The VA's actions are otherwise arbitrary, capricious, and contrary to law, in violation of the APA.

### COUNT II
### (Declaratory Judgment that the VA's Actions
### Violate the Administrative Procedure Act, 5 U.S.C. § 553)

79.     Paragraphs 1-78 are incorporated by reference herein.

80.     Section 553 of the APA requires agencies to follow notice-and-comment procedures when an agency's repeal of existing regulation is itself a substantive rule change.

81.     The VA violated the APA by unilaterally implementing and posting the 2019 VA Class Deviation on its website without properly following the APA notice-and-comment procedures. Despite that the 2019 VA Class Deviation imposes new obligations and represents a significant departure from past practice by the VA as regards the prioritization of products and services available on the AbilityOne Procurement List, the VA provided no advance notice to the public, nor did the public have an opportunity to comment on the new rule before the VA began implementing it.  The VA then compounded this violation by publishing the 2019 VA Class Deviation in the Federal Register merely as a formality – after it had already begun taking action to terminate the contracts of Plaintiffs pursuant to that Class Deviation.

82.     A class deviation is a policy authorizing or requiring contracting actions inconsistent with a FAR provision (here VAAR 808.002) across multiple acquisitions. *See* FAR Subpart 1.4. By definition, class deviations are temporary exceptions to the FAR. *See* FAR 1.404 ("When an agency knows that it will require a class deviation on a permanent basis, it should propose a FAR revision, if appropriate."). Permanent FAR revisions are final legislative rules promulgated through normal APA notice-and-comment procedures. *See* 5 U.S.C. § 553.

83.     The 2019 VA Class Deviation states that it applies to "all VA contracts," "immediately," and that it only "expires when incorporated into the VAAR, or is otherwise rescinded."

84.     By its terms, the 2019 Class Deviation is thus a permanent FAR revision that the VA was required to promulgate through the APA's notice-and-comment procedures.

## COUNT III
### (Promissory Estoppel)

85.     Paragraphs 1-84 are incorporated by reference herein.

86.     Defendants entered into contracts with each of the Plaintiffs in return for Plaintiffs providing the goods and/or services specified in those contracts.  These agreements were clear and unambiguous.

87.     As alleged above, Defendants have breached that promise by, *inter alia*, announcing that they will either cancel contracts or refuse to exercise options under these existing agreements in favor of SDVOSBs and VOSBs – even when the Rule of Two is not satisfied and at the expense of Plaintiffs.

88.     As alleged above, Plaintiffs relied on Defendants' promises in agreeing to provide the goods and/or services specified in their contracts, and in hiring and retaining the personnel necessary to do so.  Plaintiffs also invested significant sums on equipment, property, and other infrastructure to perform the contracts and in reliance on representations that Plaintiffs would continue to provide the goods and/or services for those contracts.

89.     Plaintiffs' reliance was reasonable and foreseeable.

90.     As a direct and proximate result of Defendants' acts as alleged above, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
### (Breach of the Duty of Good Faith and Fair Dealing)

91.     Paragraphs 1-90 are incorporated by reference herein.

92.     The contracts, agreements, and past practices between Defendants and Plaintiffs created a duty of good faith and fair dealing on the part of Defendants, as procurer of goods and/or services which Defendants purchased from Plaintiffs.

93.     Defendants have breached their respective duties by notifying Plaintiffs without just cause that they will no longer procure the goods and/or services which they agreed to purchase from Plaintiffs pursuant to those contracts.

94.     Defendants are liable to Plaintiffs for Plaintiffs' damages and losses resulting from Defendants' breach of their duty of good faith and fair dealing toward Plaintiffs.

95.     As a direct and proximate result of Defendants' acts as alleged above, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
### (Request for Temporary Restraining Order and Preliminary and Permanent Injunctions Prohibiting the VA's Unlawful Actions)

96.     Paragraphs 1-95 are incorporated by reference herein.

97.     By issuing and following the 2019 VA Class Deviation, including doing so without adhering to the notice-and-comment requirements of the APA, the VA has effectively eliminated the mandatory priority accorded to the AbilityOne Program by the Federal Circuit in *PDS Consultants*. This is because, under the 2019 VA Class Deviation as written, the VA may not give preference and has not given preference to items on the Procurement List when it cannot meet the Rule of Two. As currently interpreted by the VA under its 2019 VA Class Deviation, even if the Rule of Two analysis identifies only one VOSBs or SDVOSBs capable of performing the contract, the VA has not purchased the items on the AbilityOne Procurement List from the qualified NPA.

98.     By failing to follow the law, the VA has improperly denied Plaintiffs and other qualified NPAs the rights and opportunities to which they are entitled under federal court precedent, the JWOD Act, and the AbilityOne Program.

99.     The pertinent case law and statutory authorities at issue in this case are reconcilable and make clear that the VA is required to prioritize procurement from qualified nonprofit agencies under the JWOD Act when a Rule of Two analysis fails to identify two VOSBs or SDVOSBs. The VA's conduct is at odds with these authorities, and Plaintiffs thus will succeed on the merits of this matter.

28

100.    If the VA is not enjoined from transitioning Plaintiffs' AbilityOne contracts without following the Rule of Two and ignoring its obligation to prioritize products and services on the AbilityOne Procurement List, Plaintiffs, as well as the blind and visually impaired employees and members of the blind community they serve, will suffer particularized irreparable harm.

101.    The balance of hardships favors immediate entry of an injunction.  The VA will not be harmed by being required to follow the law.  The potential harm that may result to VOSBs and/or SDVOSBs from not receiving sole source contracts for this work – if any – is slight and insufficient to favor immediate enforcement, particularly when enforcement requires the VA to abide by a law designed to provide employment opportunities for people who are blind or have other severe disabilities in the manufacture and delivery of products and services to the Federal Government.  Indeed, if the VA follows through on its intent to award to PDS IFB's eyewear contract in VISN 8, PDS will then command the eyewear contracts in 17 of the 19 VISNs – whereas IFB will be reduced to just two remaining VISNs and will face the likely prospect of those contracts being terminated as well.  The public interest will be served by granting the injunction because the public's interest lies in ensuring the statutory requirements of the VBA and the JWOD Act are followed and that qualified AbilityOne NPAs are given the priority that Congress originally intended.  The VA's unlawful actions have the adverse effect of undermining the integrity of the federal procurement process.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and award Plaintiffs the following relief:

1.    A declaration that the 2019 VA Class Deviation violates the APA;

2.    A temporary restraining order prohibiting the VA from enforcing the 2019 VA Class Deviation and from awarding sole source contracts without first satisfying the Rule of

Two until such time as the Court can rule on Plaintiffs' request for a preliminary injunction;

3.       A preliminary injunction prohibiting the VA from enforcing the 2019 VA Class Deviation;

4.       A permanent injunction prohibiting the VA from enforcing the 2019 VA Class Deviation;

5.       A preliminary injunction directing the VA to give preference to items on the Procurement List whenever a Rule of Two analysis fails to identify two SDVOSBs or VOSBs, and to refrain from awarding sole source contracts without first satisfying the Rule of Two, consistent with the Federal Circuit's decision in *PDS Consultants*;

6.       A permanent injunction directing the VA to give preference to items on the Procurement List whenever a Rule of Two analysis fails to identify two SDVOSBs or VOSBs, and to refrain from awarding sole source contracts without first satisfying the Rule of Two, consistent with the Federal Circuit's decision in *PDS Consultants*;

7.       An award of Plaintiffs' costs and damages in this action, including reasonable attorneys' fees; and

8.       An award of any further relief that the Court deems just and proper.

Dated: August 14, 2019

Respectfully submitted,

Jessica C. Abrahams (DC Bar No. 435361)
Lora A. Brzezynski (DC Bar No. 444261)
John L. Roach IV (DC Bar No. 999265)
Drinker Biddle & Reath LLP
1500 K Street, NW
Washington, DC 20005
Telephone: (202) 230-5000
Facsimile: (202) 842-8465
jessica.abrahams@dbr.com
lora.brzezynski@dbr.com
lee.roach@dbr.com

Counsel for Plaintiffs Alphapointe and
Winston-Salem Industries for the Blind *dba*
IFB Solutions, Inc.