**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **ALPHAPOINTE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 19-cv-02465 (APM)** |
| | ) | |
| **DEPARTMENT OF VETERANS AFFAIRS,** | ) | |
| et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

_____ )

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiffs Alphapointe and Winston-Salem Industries for the Blind, doing business as IFB Solutions, Inc., are qualified nonprofit agencies under the AbilityOne Program, a federal program that provides employment opportunities for people who are blind or have other severe disabilities. Plaintiffs have, for many years, provided certain goods and services to the Department of Veterans Affairs ("VA") as a result of statutory preferences afforded to AbilityOne-qualified vendors. In 2019, the VA notified Plaintiffs that it would transition a number of Plaintiffs' contracts to veteran-owned businesses.  Plaintiffs assert that a recently announced change to applicable acquisition regulations—which the parties refer to as the "2019 Class Deviation"—led to the VA's decision not to renew these contracts.

Plaintiffs argue that the 2019 Class Deviation is arbitrary, capricious, and not in accordance with law because it conflicts with a Federal Circuit opinion that requires the VA to perform what is known as a "Rule of Two" evaluation before awarding a procurement contract that exceeds $ 5 million and, if the Rule is satisfied, award the contract to a veteran-owned small business.

Further, Plaintiffs maintain that the agency improperly promulgated the 2019 Class Deviation without subjecting it to notice-and-comment rulemaking.

Plaintiffs previously asked this court to enjoin the VA from enforcing the 2019 Class Deviation, which the court declined to do.   Now Defendants and Defendant-Intervenor, PDS Consultants, Inc., move to dismiss Plaintiffs' complaint under Federal Rules 12(b)(1) and 12(b)(6).  For the reasons that follow the court grants their motions as to Count II and transfers Count I to the Court of Federal Claims.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    *The Federal Circuit's Decision in* PDS Consultants

In October 2018, the Federal Circuit decided *PDS Consultants, Inc. v. United States*. The case addressed the interplay between two federal procurement statutes—the Javits-Wagner-O'Day Act ("JWOD"), 41 U.S.C. §§ 8501–06, and the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("VBA"), 38 U.S.C. §§ 8127–28—and established how the VA must make certain procurement decisions when the two statutes were seemingly in conflict with one another.  *See generally* 907 F.3d 1345 (Fed. Cir. 2018).

The JWOD was enacted in 1938, and amended in 1971, to create employment opportunities for blind and "other severely disabled" individuals. *Id.* at 1348–49.  To accomplish this, the JWOD established a fifteen-member body known as the Committee for Purchase from People Who Are Blind or Severely Disabled, or "AbilityOne."   *Id.* (citing 41 U.S.C. § 8502).   One of the Committee's principal functions is to create and maintain a procurement list, called the "AbilityOne List," which identifies products and services produced by qualified nonprofit entities that employ individuals who are blind or otherwise significantly disabled.  *See id.* at 1349.  The

JWOD, generally speaking, "requires that federal agencies," including the VA, "purchase products and services on the [AbilityOne] List from designated nonprofits." *Id.* More specifically, the JWOD states that:

> An entity of the Federal Government intending to procure a product or service on the procurement list . . . *shall procure the product or service from a qualified nonprofit agency* for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of [AbilityOne] . . . if the product or service is available within the period required by the entity.

*Id.* (citing 41 U.S.C. § 8504(a)) (emphasis added).

In 2003, Congress passed the Veteran Benefits Act of 2003 as an amendment to the Small Business Act. It provided that contracting officers "may award contracts on the basis of competition restricted to small business concerns owned and controlled by service-disabled veterans" if "the contracting officer has a reasonable expectation that not less than 2 small business concerns owned and controlled by service-disabled veterans will submit offers and that the award can be made at a fair market price." *Id.* at 1349–50 (citing 15 U.S.C. § 657f(b)). Such a procurement could not be made, however, "'if the procurement would otherwise be made from a different source' . . . including the JWOD." *Id.* at 1350.

Three years later, Congress enacted the VBA to "to remedy federal agencies' failures to meet the[] contracting goals." *Id.* It was passed in part to "increase contracting opportunities for small business concerns owned and controlled by veterans and . . . by veterans with service-connected disabilities." 38 U.S.C. § 8127(a)(1). Section 502 of the VBA requires the VA to procure products and services from veteran-owned small businesses or service-disabled, veteran-owned small businesses in certain circumstances and directs the Secretary of the VA to establish specific annual goals for the VA's contract awards to such businesses. *See PDS Consultants*, 907 F.3d at 1350 (citing 38 U.S.C. § 8127(a)).

3

Importantly, the VBA contains what is known as the "Rule of Two."  The Rule provides:

> Except as provided in subsections (b) and (c) . . . a contracting officer of the [VA] shall award contracts on the basis of competition restricted to [veteran-owned businesses] . . . if the contracting officer has a reasonable expectation that two or more [veteran-owned businesses] will submit offers and that the award can be made at a fair and reasonable price . . . .

38 U.S.C. § 8127(d).  Thus, except as provided in subsections (b) and (c) of Section 8127, the Rule of Two *requires* the VA to award a procurement contract to a veteran-owned small business through a competitive bidding process when a contracting officer determines that two or more such businesses will submit offers and that the award can be made at a "fair and reasonable price." *See Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (holding that "[Section] 8127 is mandatory, not discretionary").  The VBA's two exceptions to the Rule of Two are as follows: (1) Contracting officers "may" award a contract less than $250,000 "us[ing] procedures other than competitive procedures," 38 U.S.C. § 8127(b); and (2) the VA "may" award a contract "using procedures other than competitive procedures" if "the anticipated award price of the contract (including options) will . . . not exceed $5,000,000," and the contract award "can be made at a fair and reasonable price," *id.* § 8127(c).  Thus, taken together, subsections (b) and (c) authorize VA procurement officers to avoid "competitive procedures" for procurements of less than $5,000,000, subject to certain conditions.

In *PDS Consultants*, the Federal Circuit resolved the conflicting directives of the JWOD and the VBA with respect to larger-dollar procurement contracts subject to the Rule of Two under Section 8127(d).  Finding that the VBA took precedence over the JWOD for such contracts, the court held that "where a product or service is on the [AbilityOne] List and ordinarily would result in the contract being awarded to a nonprofit qualified under the JWOD, the VBA unambiguously demands that priority be given to veteran-owned small businesses."   907 F.3d at 1360.

*PDS Consultants* did not, however, address the interplay between the JWOD and the VBA with respect to procurements of less than $5 million, which, at the contracting officer's discretion, can be awarded to a veteran-owned business with competitive bidding.  *See* 38 U.S.C. §§ 8127(b), (c). In fact, the opinion specifically states that "[t]he two statutory provisions at the heart of this case are the VBA, 38 U.S.C. § 8127(d), and the JWOD."  *PDS Consultants*, 907 F.3d at 1357.

2.    *The 2019 Class Deviation*

After the Federal Circuit issued *PDS Consultants*, on May 20, 2019, the VA issued the 2019 Class Deviation, ostensibly to comply with the Federal Circuit's ruling.  Compl., ECF No. 1 [hereinafter Compl.], ¶ 38; *see also* Pls.' TRO Reply, ECF No. 17 [hereinafter Pls.' Reply], Ex. 1, ECF No. 17-1 at PDF pp. 31–36 [hereinafter Deviation], at 1.  The Class Deviation describes *PDS Consultants* as "binding circuit precedent," and explains that the Federal Circuit held that "when a product or service is on the AbilityOne Procurement List and ordinarily would result in award under the JWOD program, the [VBA] instead unambiguously requires that priority be given to Veteran-owned small businesses."  Deviation at 2.  Under the heading "New Policy," the 2019 Class Deviation states that "[c]ontracting officers shall apply the VA Rule of Two, as implemented in [VA Acquisition Regulation ("VAAR")] subpart 819.70, prior to awarding any contract to AbilityOne non-profit organizations or to Federal Prison Industries, Inc."  *See id.*  Further, "[f]or AbilityOne, if an award is not made to an eligible [veteran-owned small business] under VAAR subpart 819.70, the priority use of AbilityOne applies and supplies and services on the [AbilityOne] List are mandatory sources."  *See id.*

Plaintiffs Alphapointe and IFB Solutions are nonprofit corporations that provide employment opportunities, vocational training, rehabilitation services, education, and outreach for people who are blind or visually impaired.  Compl. ¶¶ 7–8.  Both companies make products and

5

offer services on the AbilityOne List.  Alphapointe provides the VA with pharmaceutical bottles and switchboard services.  *Id.* ¶¶ 7, 14.  IFB Solutions supplies the VA with eyeglasses and other vision-related products for Veterans Integrated Service Networks ("VISN") 2, 7, and 8.[1]  *See id.* ¶ 8.

Following the 2019 Class Deviation, the VA notified Plaintiffs that contracting decisions would now be subject to the 2019 Class Deviation and that the VA would not be extending its contracts with Plaintiffs.  *See id.* ¶¶ 53–61.  Plaintiffs had a number of affected contracts with the VA.  IFB Solutions' VISN 8 contract was set to expire on August 30, 2019.  *See id.* ¶ 51; *see also* 08/27/2019 TRO Hr'g Tr., ECF No. 21, at 6–7 (explaining VISN 8 option has been extended to August 30, 2019).  IFB Solutions' VISN 2 contract and Alphapointe's switchboard services contract expired on September 30, 2019.  *See* Compl. ¶¶ 55, 61.  IFB Solutions' VISN 7 contract expired in early October 2019.  *See id.* ¶ 59 (VA notifying IFB Solutions on July 9, 2019, that it will contract for 90 days more).  The expiration date for Alphapointe's pharmaceutical bottles contract was uncertain at the time Plaintiffs filed their complaint, but the VA notified Alphapointe that it would not extend the bottles contract because it had identified a veteran-owned business to assume that contract.  *See id.* ¶ 60.

### B.   Procedural Background

Plaintiffs filed this action on August 15, 2019, against Defendants the VA, the Secretary of the VA, and the United States (collectively "Federal Defendants"), *see generally* Compl.,[2] and the same day filed a Motion for a Temporary Restraining Order and Preliminary Injunction,

---

[1] "VISNs," or Veterans Integrated Services Networks, are administrative regional systems of care established by the VA to deliver health and other services to veterans.  The United States is divided into 18 VISNs. *See* https://www.va.gov/health/aboutvha.asp (last visited July 23, 2020).

[2] Plaintiffs designated this action as related to an action pending before Judge Ketanji Brown Jackson that challenges an earlier Class Deviation.  *See* Notice of Related Case, ECF No. 2 (related to *Nat'l Indus. For the Blind. v. Dep't of Veterans Affairs*, 1:17-cv-00992).  Judge Jackson determined, however, that the cases were not "related" under Local Civil Rule 40.5 and therefore the matter was re-assigned to this court.

Pls.' Mot. for a Temp. Restraining Order & Prelim. Inj., ECF No. 3. The nub of Plaintiffs' Complaint is that the VA, because of the 2019 Class Deviation, is improperly awarding low-dollar contracts for goods and services on the AbilityOne List to veteran-owned small businesses in situations where it should be preferencing AbilityOne businesses. *See* Compl. ¶¶ 45–50. Their Complaint advances four causes of action.[3] The first two arise under the Administrative Procedure Act ("APA"). *See id.* ¶¶ 72–84. As to count one, they allege that the 2019 Class Deviation is arbitrary, capricious, and not in accordance with law because it disregards *PDS Consultants* by prioritizing veteran-owned small businesses even where the Rule of Two is not satisfied. *See id.* ¶¶ 72–78. As to the second count, Plaintiffs claim that the VA's issuance of the 2019 Class Deviation issuance was procedurally deficient because Federal Defendants did not follow notice-and-comment rulemaking. *See id.* ¶¶ 79–84. The third and fourth causes are contract or quasi-contract claims of promissory estoppel and breach of the duty of good faith and fair dealing. *See id.* ¶¶ 85–95.

The day after Plaintiffs filed their complaint, PDS Consultants, Inc. ("PDS") moved to intervene as a defendant. PDS Consultants, Inc.'s Mot. to Intervene & Statement of P. & A., ECF No. 10. PDS is a service-disabled, veteran-owned small business verified as eligible to receive contract awards under the Veterans First Contracting Program, and for more than twenty years, PDS "has provided the VA with vision-related products and services throughout the United States." *Id.* at 3. The court determined that PDS had satisfied the requirements to intervene as a matter of right and granted its motion. *See* Order, ECF No. 16.

---

[3] A fifth count requests a temporary restraining order and preliminary and permanent injunctions "prohibiting the VA's unlawful actions," Compl. ¶¶ 96–101, but this count simply lists Plaintiffs' requested relief and does not suffice as a freestanding cause of action, *see Base One Tech., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) (dismissing a claim for "injunctive relief" because it is "a form of relief to redress the other claims asserted by [the plaintiff]" and "not a freestanding cause of action").

Shortly thereafter, the court denied Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.  *See Alphapointe v. Dep't of Veterans Affairs*, 416 F. Supp. 3d 1 (D.D.C. 2019).  At the preliminary injunction stage, the court, relying on a 1998 Federal Circuit decision, *Southfork Systems, Inc. v. United States*, found that it had jurisdiction over Counts I and II.  *Id.* at 6–7 (citing *Southfork Systems*, 141 F.3d 1124 (Fed. Cir. 1998)).  Nonetheless it denied Plaintiffs' request for injunctive relief because Plaintiffs failed to demonstrate irreparable harm or a likelihood of success on the merits of either Count I or Count II.  *Id.* at 1, 8–11.  With respect to Count I, the court determined that "Plaintiffs . . . failed to show that the 2019 Class Deviation . . . is an arbitrary and capricious reading of *PDS Consultants*."  *Id.* at 10.  On Count II, the court held that the 2019 Class deviation was likely exempt from notice-and-comment procedures pursuant to the "proprietary rules exception" under 5 U.S.C. § 553(a)(2).  *Id.* at 11.

Federal Defendants and PDS now move to dismiss Plaintiff's Complaint under Federal Rules 12(b)(6) and 12(b)(1).  PDS Consultants, Inc.'s Mot. to Dismiss, ECF No. 30 [hereinafter PDS Mot.]; Defs.' Mot. to Dismiss the Compl., ECF No. 31 [hereinafter Fed. Defs.' Mot.].  Defendants renew their threshold assertion that the court lacks jurisdiction as to Count I, because the Court of Federal Claims has exclusive jurisdiction over that claim.[4]  Defendants also contend that Plaintiffs' APA counts fail to state a claim.  Plaintiffs have agreed to voluntarily dismiss Counts III and IV.  Consol. Opp'n to Defs.' & Intervenor's Mots. to Dismiss the Compl., ECF No. 32 [hereinafter Pls.' Opp'n], at 7 n.2.  Accordingly, the court does not address either count in this Memorandum Opinion.

---

[4] It is unclear whether Defendants are contesting the court's jurisdiction as to Count II.  The Federal Defendants assert that "Counts I and II" must be dismissed because the Tucker Act provides an adequate alternative remedy, Fed. Defs.' Mot. at 16, but neither the headers in their motion, *see id.* at 12 (seeking to dismiss "Counts I, III, and IV" as "beyond this court's jurisdiction"), nor their reply brief advance that argument, *see* Fed. Defs.' Reply in Supp. of Fed. Defs.' Mot. to Dismiss, ECF No. 38, at 6–7 (arguing that the court lacks jurisdiction as to "Count I" only due the availability of an adequate remedy in the Court of Federal Claims).  Notwithstanding the confusion, the court addresses its jurisdiction as to Count II below.

### III.    JURISDICTION

The court begins with its subject-matter jurisdiction.  To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of establishing its jurisdiction by a preponderance of the evidence.  *Thompson v. Peace Corps*, 159 F. Supp. 3d 56, 59 (D.D.C. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002)).  The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat. Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)); *see also Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 111 (D.D.C. 2020).  In determining whether it has jurisdiction, a court may consider "the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Moghaddam*, 424 F. Supp. 3d at 111 (citing *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003)).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Id.* (cleaned up) (citation omitted).  And the court "need not accept as true 'a legal conclusion couched as a factual allegation' or an inference 'unsupported by the facts set out in the complaint.'"  *Id.* (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

### A.    Count I:  Arbitrary-and-Capricious Challenge

Both Federal Defendants and PDS argue that the court lacks jurisdiction as to Plaintiffs' arbitrary-and-capricious claim in Count I.  *See* Fed. Defs.' Mot. at 12–16; PDS Mot. at 6–7.

As PDS puts it, Count I is "actually a *de facto* bid protest, challenging specific procurement actions by the VA," which can only be heard in the Court of Federal Claims under the Tucker Act. PDS Mot. at 6; *see also* Fed. Defs.' Mot. at 12–16. When deciding Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, the court found that it was "a close call" whether the court had jurisdiction, but ultimately held that Plaintiffs had "carried their burden of establishing jurisdiction" because their claim centered on challenging "the 2019 Class Deviation itself, and not its application to a particular procurement decision." *Alphapointe*, 416 F. Supp. 3d at 7. Today, the court reaches a different conclusion.

The Tucker Act confers exclusive jurisdiction on the Court of Federal Claims for any "action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or *any alleged violation of statute or regulation in connection with a procurement or a proposed procurement*." 28 U.S.C. § 1491(b)(1) (emphasis added).[5] The italicized text is central to this case. The Federal Circuit has interpreted that jurisdiction-conferring provision very broadly. In *RAMCOR Services Group, Inc. v. United States*, the court explained that "[t]he language of § 1491(b) . . . does not require an objection to the actual contract procurement, but only to the 'violation of a statute or regulation in connection with a procurement a proposed procurement.'" 185 F.3d 1286, 1289 (Fed. Cir. 1999). "The operative phrase 'in connection with' is very sweeping in scope. As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." *Id.*;

---

[5] Prior to 2001, federal district courts enjoyed concurrent jurisdiction over Tucker Act claims. That changed with the passage of the Administrative Dispute Resolution Act ("ADRA"), which included a sunset provision terminating district courts' Tucker Act jurisdiction in 2001. *See* Pub. L. No. 104-320, § 12(d) (1996); *see also Validata Chem. Servs. v. U.S. Dep't of Energy*, 169 F. Supp. 3d 69, 75 (D.D.C. 2016). By stripping district courts of Tucker Act jurisdiction, Congress meant to "develop a uniform national law on bid protest issues" and to put an end to forum shopping. *Validata Chem.*, 169 F. Supp. 3d at 78 (citing 142 Cong. Rec. 13,817 (1996) (statement of Sen. Cohen)); *id.* ("Congress's intent in enacting ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions." (quoting *Emery Worldwide Airlines, Inc. v. U.S.*, 264 F.3d 1071, 1079 (Fed. Cir. 2001)).

*see also Acetris Health, LLC v. United States*, 949 F.3d 719, 728 (Fed. Cir. 2020) (citing *RAMCOR*'s broad construction of "in connection with").

Courts in this circuit have embraced this broad reading.  In *Public Warehousing Co. K.S.C. v. Defense Supply Center Philadelphia*, for instance, the court rejected the plaintiff's argument that "procurement" was intended to refer only to a bid protest or "a dispute over an individual contract solicitation or award."  489 F. Supp. 2d 30, 39–40 (D.D.C. 2007).  The court reasoned that a "'bid protest' limitation" had been squarely rejected and that "[l]imiting the 'violation of statute or regulation' prong to bid protest cases would render it superfluous" because if "section 1491(b)(1) were limited to claims challenging the merits of a specific solicitation or contract award, the 'violation of statute or regulation' clause would serve no purpose because the other clauses in section 1491(b)(1) vesting jurisdiction in the Court of Federal Claims would suffice."  *Id.* at 40 (citing *RAMCOR*, 185 F.3d at 1289; *Labat-Anderson, Inc. v. United States*, 346 F. Supp. 2d 145, 151 (D.D.C. 2004)).  *See also Validata*, 169 F. Supp. 3d at 78–79.

This case fits within the broad jurisdictional parameters of Section 1491(b).  Count I challenges the 2019 Class Deviation as arbitrary, capricious, and contrary to law because it "exceeds the scope of the Federal Circuit's mandate in *PDS Consultants*."  Compl. ¶ 74.  Further, the Complaint alleges, "[t]he VA has cited the 2019 VA Class Deviation as its basis for elevating contract preference for" veteran-owned businesses over AbilityOne businesses and details a number of Alphapointe's and IFB Solutions' contracts that were cancelled as a result.  *Id.* ¶¶ 75–77.  Although Plaintiffs frame Count I as an arbitrary-and-capricious challenge to the validity of the 2019 Class Deviation itself, the essence of their claim is that the VA has removed them as the incumbent provider of goods and services by misapplying the relevant procurement statutes—the JWOD and the VBA.  *See id.* ¶¶ 72–78.  Thus, what they contest is an alleged statutory violation

"in connection with a procurement or a proposed procurement." *See RAMCOR*, 185 F.3d at 1289 ("As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction.").  Plaintiffs cannot avoid the exclusive jurisdiction of the Court of Federal Claims by casting their cause of action as a general challenge to the 2019 Class Deviation under the APA.

The court in *PDS Consultants* reached the same conclusion.  There, one of the defendant-appellants characterized the plaintiff's claim as challenging "the validity of the [VA Acquisition Regulations] and AbilityOne program as a whole," and therefore argued that the case belonged before a federal district court.  907 F.3d at 1355.  The Federal Circuit held otherwise.  It explained that "PDS Consultants' claims fall squarely within Tucker Act jurisdiction . . . .  [R]ather than challenge the validity of the VAAR and AbilityOne programs as the Industries for the Blind contends, PDS Consultants alleged a statutory violation—namely, that the VA acted in violation of the VBA by awarding contracts without first conducting the Rule of Two analysis." *Id.* at 1356.  Thus, as an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement," the court concluded, "PDS Consultants' action arises under the Claims Court's jurisdiction." *Id.*  So, too, here.  Plaintiffs maintain that the JWOD requires the VA to purchase goods and services from a qualified AbilityOne contractor unless the Rule of Two applies, yet the 2019 Class Deviation "appears to permit" "the VA to omit or disregard the Rule of Two analysis and award contracts on a sole source basis," and to incorrectly "indicate that the directives of § 8127(b) and (c) [of the VBA] override the contracting requirements of the JWOD Act as well." Compl. ¶¶ 45, 50.  It was therefore improper, Plaintiffs contend, for the VA not to have extended their contracts.  Like the VBA, the JWOD is a statute that is central to government procurement. *See id.* (describing the VBA as a statute that "dictates the methodology the VA must

12

employ for procurements"). So, at root, what Plaintiffs challenge, is the interplay between two procurement statutes: the VBA and the JWOD. Plaintiffs' action therefore "arises under the Claims Court's jurisdiction." *PDS Consultants*, 907 F.3d at 1356.

This result surely will surprise Plaintiffs, as it represents an about-face from what the court concluded on the motion for preliminary injunction. *See* Pls.' Opp'n at 7–9 (citing *Alphapointe*, 416 F. Supp. 3d at 6–7). The court, however, is no longer convinced that the Federal Circuit's decision in *Southfork Systems, Inc. v. United States*, 141 F.3d 1124, on which the court relied at the preliminary injunction stage, *see Alphapointe*, 416 F. Supp. 3d at 6, compels jurisdiction. Upon closer inspection, *Southfork Systems* is about the failure to state a claim, not subject matter jurisdiction. *See* 141 F.3d at 1134 ("We agree with the Court of Federal Claims that, in Counts I–III of its amended complaint, Southfork failed to state a claim upon which relief could be granted."). The plaintiff there had challenged the validity of certain agency implementing regulations, *see id.* at 1133 n.6, but the court held that such allegations failed to support the plaintiff's actual claims, which were that the agency had impliedly breached its duty to fairly and honestly consider bids, *see id.* at 1134 (stating that "[w]e never have said, however, that violation of a statute or regulation constitutes a per se breach of the government's duty to treat all bidders fairly and honestly"). The Federal Circuit's statement in *Southfork* that "if a bidder wishes to challenge the validity of a regulation governing a procurement, the proper method of doing so is to bring an action in federal district court under the Administrative Procedure Act, 5 U.S.C. § 702," *id.* at 1135, is therefore dicta. Indeed, no subsequent decision from the Federal Circuit relies on

*Southfork* to analyze jurisdiction under the Tucker Act.[6]   This court should not have relied on *Southfork* as a jurisdictional holding in the first place.

Plaintiffs also point out that, in a related case that challenges an earlier VA Class Deviation from 2017, defendants did not contest the district court's subject-matter jurisdiction, s*ee Nat'l Indus. for the Blind, Inc. v. U.S. Dep't of Veterans Affairs*, 1:17-cv-00992-KBJ (D.D.C. May 24, 2017), thus suggesting that at least Federal Defendants somehow have implicitly acknowledged jurisdiction in this case, *see* Pls.' Opp'n at 10–11.   But whether these defendants conceded jurisdiction or not in a related case has no bearing on this one.   This court has an independent obligation to evaluate its own jurisdiction, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and finds it wanting as to Count I.

### B.      Transfer of Count I to the Court of Federal Claims Is in the Interest of Justice

"[U]pon concluding that it lacks jurisdiction" a federal court should decide "whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court . . . that has jurisdiction under 28 U.S.C. § 1631."   *Roseberry-Andrews v. Wilson*, 292 F. Supp. 3d 446, 456 (D.D.C. 2018) (internal quotation marks omitted) (quoting *Tootle v. Sec. of Navy*, 446 F.3d 167, 173 (D.C. Cir. 2006)).   Transfer to the Court of Federal Claims is appropriate in this case.   *See Validata*, 169 F. Supp. 3d at 91 (transferring case to the Court of Federal Claims).   The merits of Count I are complex and, although the court previously held that Plaintiffs had not shown a substantial likelihood of success on that claim, *see Alphapointe*, 416 F. Supp. 3d at 9–10, it is in the interest of justice to allow Plaintiffs to present Count I to a court that possesses expertise in questions of

---

[6] The only subsequent case cited by Plaintiffs that views *Southfork* as supplying a jurisdictional holding is *Automated Comm'n Sys., Inc. v. United States*, 49 Fed. Cl. 570, 575 (Fed. Cl. 2001).   *See* Pls.' Opp'n at 7.   For the reasons discussed, the court declines to follow *Automated Communication Systems*.

federal contracting law. Accordingly, the court will transfer Count I to the Court of Federal Claims.[7]

### C.      Count II:  Failure to Subject the 2019 Class Deviation to Notice and Comment

As to Plaintiffs' notice-and-comment claim advanced in Count II, the court plainly has jurisdiction.  "[T]he Court of Federal Claims lacks APA jurisdiction" and therefore could afford no remedy for the alleged procedural violation.  *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003); *see also McNeil v. United States*, 293 Fed. App'x 758, 760 (Fed. Cir. 2008) ("The Court of Federal Claims 'lacks the general federal question jurisdiction of the district courts, which would allow it to review [an] agency's actions and to grant relief pursuant to the Administrative Procedure Act.'" (quoting *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997)); *Schmidt v. United States*, 89 Fed. Cl. 111, 125 (Fed. Cl. 2009).  Count II is thus properly before this court.  *See Fire-Trol Holdings LLC v. U.S. Forest Serv.*, 209 Fed. App'x 625, 627 (9th Cir. 2006) (holding that the district court properly had jurisdiction over claim that "the Forest Service promulgated a 'regulation' and that that regulation is invalid because the Forest Service failed to comply with the rule-making procedures laid out in § 553" of the APA).

## IV.     DISCUSSION

### A.      Propriety of a Rule 12(b)(6) Dismissal

The court now turns to Defendants' Rule 12(b)(6) motion to dismiss Count II for failure to state a claim.  Before reaching the merits, the court first must address a threshold matter.  Plaintiffs protest Defendants' efforts to *dismiss* their APA claim under Rule 12(b)(6), rather than seek entry

---

[7] As the Court in *Validata*, noted, it is possible that the Court of Federal Claims will disagree with the conclusion "that the ADRA and its sunset provision vest that court with exclusive jurisdiction over this action," resulting in a "perpetual game of jurisdictional ping-pong," 169 F. Supp. 3d at 91 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988)), but "it would be improper for this Court to avert the potential problem by reaching the merits notwithstanding its lack of jurisdiction," *id.*

of summary judgment under Rule 56.  According to Plaintiffs, Count II plainly states a plausible claim under the APA, and therefore it would be inappropriate to dismiss their claim at this stage, before they have received the administrative record and fashioned their challenges accordingly. *See* Pls.' Opp'n at 15–19.[8]

Plaintiffs overstate the need for an administrative record to resolve Count II.  The D.C. Circuit has held that an APA claim may be resolved on a motion to dismiss, and does not require an administrative record, where a party's assertion that a "challenged provision[] violate[s] [a statute] can be resolved with nothing more than the statute and its legislative history." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 282 F.3d 818, 830 (D.C. Cir. 2002) ("We said in *American Bankers*, with respect to a claim that a regulation conflicted with a statute, that the court did not even need the administrative record to determine the validity of the regulation."), *vacated in part on other grounds sub nom. Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003).  On the other hand, where the APA challenge is "to the [agency's] rule-making process" or "to the manner in which the [agency] has applied the rule in specific cases that does not depend entirely on the argument that the rule itself violates the statute," *Am. Bankers*, 271 F.3d at 267, resolving such a dispute without "calling for the administrative record" would be improper, *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (faulting the district court for not "calling for the administrative record" and instead relying "on the parties' written or oral representations to discern the basis on which the [agency] acted").

Count II does not require the court to "call for" the administrative record.  In that count,

---

[8] Plaintiffs make a similar argument as to Count I.  *See* Pls.' Opp'n at 16–17.  However, because the court has found it lacks jurisdiction over Count I, it cannot reach the merits of that claim either on a motion to dismiss or on a motion for summary judgment.  *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998).

Plaintiffs contend that "[t]he VA violated the APA by unilaterally implementing and posting the 2019 Class Deviation on its website without properly following the APA notice-and-comment procedures." Compl. ¶ 81. Thus, Plaintiffs do not challenge the manner of rulemaking; rather, they challenge whether rulemaking was required in the first place. The APA either requires that the 2019 Class Deviation be subject to notice and comment, or it does not. Resolving Plaintiffs' challenge therefore requires no obvious need for the administrative record.

In any event, Plaintiffs' demand for the administrative record is largely academic. Concurrent with filing their reply brief, the Federal Defendants filed a certified list of the Administrative Record and provided Plaintiffs with the record contents the same day. *See* Notice of Filling Certified List of Administrative Record, ECF No. 37; *see also* Pls.' Mot. for Leave to File Surreply in Opp'n to Defendants' and Intervenors' Mots. to Dismiss, ECF No. 39 [hereinafter Surreply Mot.], at 1. Thereafter, Plaintiffs filed a Motion for Leave to File Surreply, arguing that they should have the opportunity to make additional arguments based on the administrative record. *See generally* Surreply Mot. No Defendant opposed the motion. The court therefore grants Plaintiffs leave to file their Surreply and will consider the arguments contained in that filing. Those arguments, as will be seen, do not alter the court's conclusion that dismissal of Count II under Rule 12(b)(6) is appropriate.

### B.     Failure to Subject the 2019 Class Deviation to Notice and Comment

Section 553 of the APA sets forth the procedures for notice-and-comment rulemaking, and it provides exceptions for when those procedures are not required. *See* 5 U.S.C. § 553. As relevant here, the APA excludes from notice and comment matters "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." *Id.* § 553(a)(2). This exception, known as the "proprietary rules exception," provides that "[t]he requirements for the

general use of public rulemaking procedures do not apply to an agency's setting of rules for the conduct of a proprietary type of agency business." JAMES T. O'REILLY, ADMINISTRATIVE RULEMAKING, § 3:19 (2019).  "If the agency is acting like any proprietor in the private sector would act, managing, buying, or selling personal property, real estate, or services, then the agency rule on that subject is exempt from rulemaking requirements." *Id.*

As the court noted in its previous opinion, the D.C. Circuit has said little about this exception. *See Alphapointe*, 416 F. Supp. 3d at 11.  However, the Circuit has observed that Congress intended for it to cover both narrow "managerial" proprietary decisions and broader proprietary "matters of interpretation and policy." *Nat'l Wildlife Fed'n v. Snow*, 561 F.2d 227, 231–32 (D.C. Cir. 1976).  Furthermore, the Circuit has observed "[t]hat the governmental function is not strictly 'proprietary,' or the regulation's character is not 'mechanical,' does not curtail Section 553(a)(2)'s permissive effect.  Public policy may be sorely affected, and the wisdom of public input manifest, but the statutory exemption still prevails when 'grants,' 'benefits' or other named subjects are 'clearly and directly' implicated." *Humana of S.C., Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C. Cir. 1978) (citations omitted).

Here, the 2019 Class Deviation "clearly and directly" relates to the VA's proprietary contracting function, including "matters of interpretation and policy" relating to such contracts. Under the heading "New Policy," the 2019 Class Deviation states that "[c]ontracting officers shall apply the VA Rule of Two, as implemented in VAAR subpart 819.70, prior to awarding any contract to AbilityOne non-profit organizations or to Federal Prison Industries, Inc."  Deviation at 2.  Further, it provides that "[f]or AbilityOne, if an award is not made to an eligible [veteran-owned business] under VAAR subpart 819.70, the priority use of AbilityOne applies and supplies and services on the [AbilityOne] List are mandatory sources." *See id.*  These directives plainly relate

to the VA's contracting for goods and services in its proprietary capacity.  Accordingly, the 2019 Class Deviation was not subject to notice-and-comment procedures.[9]

Plaintiffs cite to dicta in a D.C. Circuit case, *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corporation*, expressing doubt that "the term 'contract,' as it is used in subsection 553(a)(2), reaches beyond the ordinary meaning of a bargained-for, voluntary agreement.  To extend the exception to an agreement that is mandatory as this one is . . . would open the door to substantive regulation without public participation."  Pls.' Opp'n at 23 (citing 589 F.2d 658, 664 (D.C. Cir. 1978)).  But Plaintiffs misapply this quote.  In *Guardian Federal Saving & Loan Association*, the agency argued that the Section 553(a)(2) exception "extend[ed] not only to rules establishing the initial terms and conditions of the agreement [between the insurer and insured], but also to all subsequent rules affecting the insured institutions."  589 F.2d at 664.  This case does not involve such "subsequent rules."  Rather, the 2019 Class Deviation concerns how the VA enters into contracts for goods and services in exercise of its propriety function.  Thus, there is no concern that applying the Section 553(a)(2) to the 2019 Class Deviation will take the term "contract" beyond its ordinary meaning.

Plaintiffs once again rely on *Misso Services Corporation v. United States Small Business Administration*, to support the proposition that the proprietary rules exception does not apply in this case.  Pls.' Opp'n at 23–24.  But that citation fares no better on the merits than it did at the preliminary injunction stage.  *See Alphapointe*, 416 F. Supp. 3d at 11.  In *Misso*, the court required the Small Business Administration to comply with notice-and-comment procedures before issuing a substantive policy change that precluded the plaintiff from continuing to conduct its business.

---

[9] Because the court finds that the Section 553(a)(2) exception applies, the court need not address Defendants' alternative arguments that notice and comment was impracticable, the 2019 Class Deviation is not a substantive rule, and the 2019 Class Deviation has since been submitted for public notice and comment.  *See* Fed. Defs.' Mot. at 22–24; PDS Mot. at 7–11.

*See* 1981 WL 30841, No. 81-0283, at *8 (D.D.C. Dec. 23, 1981).  But as the court previously explained, the *Misso* opinion did not address, or even mention, the proprietary rules exception. *See generally id.*  Plaintiffs now argue that the court "misapprehended their argument as to why *Misso* is both relevant and controlling." Pls.' Opp'n at 24.  Plaintiffs explain that they cited to *Misso* because "it analogizes to the facts" in this case and because "[t]he regulation at issue generally pertained to government contracting, but did not adequately relate to it so as to bring the regulation within the ambit of § 553(a)(2)." *Id.*  Whatever the factual similarities between this case and *Misso*—and the court does not concede that there are any—the case lacks any capacity to persuade when it does not even mention the proprietary rules exception at issue here.

Finally, in their Surreply, Plaintiffs contend that, because the administrative record nowhere identifies Section 553(a)(2), the Federal Defendants may not invoke that justification now.  Surreply at 5–6.  But whether or not Defendants considered Section 553(a)(2) when promulgating the 2019 Class Deviation has no bearing on the legal question of whether the deviation itself is exempt from notice-and-comment procedures.  It is either exempt or it is not. The APA did not require the VA to subject the 2019 Class Deviation to notice and comment.

## IV.    CONCLUSION

For the foregoing reasons, the court grants Federal Defendants' Motion to Dismiss, ECF No. 31, and Intervenor-Defendant's Motion to Dismiss, ECF No. 30, as to Count II and transfers Count I to the Court of Federal Claims.  Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendants' and Intervenors' Motions to Dismiss, ECF No. 39, is granted.

A separate order accompanies this Memorandum Opinion.

Dated:  July 29, 2020

Amit P. Mehta
United States District Court Judge